*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM JOZIF-GERGES MONA and SUSAN
MARDROSS,

Plaintiffs-Appellants,

v

STATE AUTO PROPERTY AND CASUALTY
INSURANCE COMPANY, CHAVON NICOLE
BOTTIAUX, and GREGORY KRUKOWSKI,

Defendants-Appellees.

UNPUBLISHED
September 21, 2023

No. 363182
Macomb Circuit Court
LC No. 2020-003835-NI

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendant Gregory Krukowski. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of an automobile accident involving plaintiffs and defendant Chavon Nicole Bottiaux. At the time of the accident, Bottiaux and Krukowski lived together but were not romantically involved. Krukowski owned two vehicles, a Ford Taurus and a Chevrolet Astro Van, which he used for work. According to Bottiaux, she had access to and used the Taurus but, aside from moving the van to a different parking spot or taking it to get gas "once or twice," she did not have permission to drive it.

On the morning of the accident, Bottiaux and Krukowski got into an argument about the Taurus. Bottiaux stated that Krukowski hid the keys to the car because she had been out late the night before at a bachelorette party and did not want her to drive. The argument escalated, and police were called over the domestic disturbance. Krukowski was eventually arrested and, upon leaving the scene, the police left the keys to his van on the front porch of the house. Upon discovering the keys, and not having the keys to the Taurus, Bottiaux took them and went to the

-1-

store for diapers. It was during this trip that she caused the accident with plaintiffs' Chevrolet Equinox.

In the trial court, Krukowski moved for summary disposition on the basis that the only claim against him—brought under the owner's liability statute, MCL 257.401—was not viable because the evidence demonstrated he did not give Bottiaux his express or implied consent to use his van. Plaintiffs opposed the motion, arguing that the nature of the parties' relationship raised an issue of fact regarding whether Bottiaux had Krukowski's implied consent to use the van. The trial court agreed with Krukowski and granted the motion.[1] This appeal followed.

## II. STANDARD OF REVIEW

This court reviews de novo a trial court's decision on a motion for summary disposition. *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 506; 991 NW2d 230 (2022). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Id*. at 507 (quotation marks and citation omitted).

## III. ANALYSIS

Plaintiffs contend the trial court erred when it granted Krukowski's motion for summary disposition because Krukowski did not carry his burden to rebut the common-law presumption that Bottiaux had his permission to use the van. In support, plaintiffs highlight the fact that Krukowski and Bottiaux lived together for nine years and that Bottiaux had used Krukowski's vehicles in the past. Plaintiffs contend, therefore, that the evidence presented in Krukowski's motion was insufficient to rebut the presumption, and the trial court should have denied the motion. We disagree.

The Michigan Vehicle Code, MCL 257.923 *et seq*., "broadly imposes liability for the negligent operation of a motor vehicle if the owner knows or has consented to the operation of that motor vehicle." *Robinson Estate v Robinson*, 339 Mich App 682, 689; 984 NW2d 844 (2021). Under MCL 257.401(1):

> The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law. The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge. It is presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her spouse, father, mother, brother, sister, son, daughter, or other immediate member of the family.

---

[1] Plaintiffs obtained default judgments against Bottiaux. Their claims against her or defendant State Auto Property and Casualty Insurance Company are not at issue on appeal.

"The purpose of the statute is to place the risk of damage or injury on the person who has the ultimate control of the motor vehicle, as well as on the person who is in immediate control." *Cooke v Ford Motor Co*, 333 Mich App 545, 555; 963 NW2d 405 (2020).

In addition to the statutory presumption that family members have consent to drive a vehicle, see MCL 257.401(1), "the operation of a motor vehicle by a person who is not a member of the owner's family gives rise to a rebuttable common-law presumption of consent." *Bieszck v Avis Rent-A-Car Sys, Inc*, 459 Mich 9, 18-19; 583 NW2d 691 (1998). The presumption of consent or knowledge "arises upon proof of permission to use the car," *Roberts v Posey*, 386 Mich 656, 663; 194 NW2d 310 (1972), and may only be overcome by "positive, unequivocal, strong and credible evidence." *Bieszck*, 459 Mich at 19. In *Bieszck*, the Michigan Supreme Court explained the rationale for the presumption:

> The statute absolves the owner from liability only when the vehicle is being driven without his express or implied consent or knowledge. The consent or knowledge, therefore, refers to the fact of the driving. It does not refer to the purpose of the driving, the place of the driving, or to the time of the driving.
>
> The purpose of the statute is to place the risk of damage or injury upon the person who has the ultimate control of the vehicle.
>
> The owner who gives his keys to another, and permits that person to move several thousand pounds of steel upon the public highway, has begun the chain of events which leads to damage or injury.
>
> The statute makes the owner liable, not because he caused the injury, but because he permitted the driver to be in a position to cause the injury. [*Id*. at 14 (quotation marks and citation omitted).]

In granting Krukowski's motion for summary disposition, the trial court relied on *Christiansen v Hilber*, 282 Mich 403; 276 NW2d 495 (1937), a case in which the Michigan Supreme Court considered the question of whether the son of the owner of a work vehicle had permission to use the vehicle for non-work purposes. The plaintiff sued after he was struck by the defendant's vehicle, which was being driven by the defendant's son. *Christiansen*, 282 Mich at 404-405. The defendant testified that his son

> drove the truck when there was hauling to be done, when it was necessary, when there was something to do; that the truck was bought for business purposes and he never permitted any one to use it for pleasure purposes, and gave no one permission to use it on the occasion in question. Eugene Hilber, the son, testified the truck was used at the camp for hauling supplies and he used it on the occasion in question, without permission, for pleasure purposes. While he was never instructed not to use it, he was told only to take it when "we needed it." There was no other testimony bearing upon appellant's consent. [*Id*. at 408.]

On the basis of this testimony, the Court concluded that the trial court should have entered a directed verdict for the defendant because the vehicle was "bought, kept, and used for business

purposes, and appellant never gave any one permission to use it for pleasure purposes, and that its use on the occasion in question was without appellant's consent or permission." *Id*.

In *Fout v Dietz*, 75 Mich App 128, 130-131; 254 NW2d 813 (1977),[2] this Court considered the question of whether the defendant drove his friend's vehicle with consent when he took the keys out of his friend's room early in the morning to go get food. The night before, the defendant and his friend "attended a party where large quantities of intoxicants were consumed," and returned to the friend's house to sleep. *Id*. at 130. Early the next morning, the defendant entered his friend's room, took the keys from the dresser, and took his friend's car, during which time he struck and killed a pedestrian. *Id*. at 130-131.

Concluding the trial court should have entered a directed verdict in favor of the owner, we determined there was no evidence to show that the defendant obtained his friend's express or implied consent to use the vehicle:

> The fact that Dietz had been staying overnight at Bredow's cottage could not carry with it an implied consent to use Bredow's auto. Bredow allowed his cousin to use the car on one occasion prior to any familiarity with Dietz. This cannot imply consent to Dietz.
>
> We are, frankly, hard put to understand how leaving one's keys on a dresser in one's own room, not assigned to anyone else, implies permission to take them. In point of fact Bredow's keeping them in his own room rather than the living room, where Dietz was staying, or some other common room, implies just the opposite. [*Id*. at 135.]

Similarly, in *Caradonna v Arpino*, 177 Mich App 486, 487-488; 442 NW2d 702 (1989), we concluded that the trial court erred when it entered a pretrial ruling that the defendant's vehicle was used with his implied consent, thus subjecting him to liability for the accident that ensued when his girlfriend's son took the vehicle and got into an accident. The defendant asked his girlfriend to periodically move his car in the parking lot to make it appear as if it were being driven. *Id*. at 488. The girlfriend's son, who was home from the Navy, was told not to take the car but did so by taking the keys from the kitchen and caused an accident. *Id*. at 487-488. Reversing the trial court, this Court reasoned that the act of leaving keys in the kitchen does not give implied consent to use the car, "especially when one has been expressly told not to take a car." *Id*. at 491.

The trial court did not err when it granted summary disposition in favor of Krukowski. Bottiaux testified that while she had permission to use and did use Krukowski's Taurus, she did not have permission to use his work van, which is what Krukowski used to make his living. She claimed that while she had "moved [the van] in the past, like out of the driveway, into the street, or taken it up to the gas station once or twice," she did not have permission from Krukowski to drive the car. See *Christiansen*, 282 Mich at 408 (stating that permission to use a vehicle for

---

[2] Cases from this Court published before November 1, 1990, are not binding but may be considered for their persuasiveness. *Pegasus Wind, LLC v Tuscola Co*, 340 Mich App 715, 727 n 4; 988 NW2d 17 (2022).

limited work purpose does not extend to use for pleasure). Similarly, Bottiaux took the keys to the vehicle without Krukowski's knowledge and from a location and circumstance that would not imply his consent: after Krukowski was arrested, law enforcement left the keys to the van on the porch of the house, where Bottiaux would later discover and take them. See *Fout*, 75 Mich App at 135 (holding that leaving keys on a dresser was insufficient to imply consent); *Caradonna*, 177 Mich App at 491 (similar holding for keys in kitchen).

That Bottiaux did not have permission to use the van is further evidenced by the fact that on the morning of the incident between Bottiaux and Krukowski, Bottiaux attempted to obtain the keys to the Taurus, which Krukowski hid from her, apparently because she had been drinking the night before. It would be illogical to presume that even though Krukowski would not give Bottiaux the keys to the Taurus, which she claimed she used regularly, he consented to her using his work van instead. This is especially so where it appears the argument over use of the car escalated into a domestic assault.

In sum, the trial court did not err when it granted summary disposition in favor of Krukowski, who rebutted the common-law presumption of consent by presenting evidence that Krukowski did not want Bottiaux to use the van and that she knew she did not have permission to use the van.

Affirmed. Krukowski, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly